## Hiram Barnum vs. The Bank of Pontiac.

First Circuit.  Where an application was made, under the act of June 21, 1837, for an injunction against the
                bank of Pontiac, and the bill alledged merely a demand and refusal on the part of the bank
Barnum          to pay its notes, the chancellor refused to grant the injunction prayed for.
vs.
Bank of   In the act incorporating the bank of Pontiac, the act of April 23, 1833, is referred to, and, in ef-
Pontiac.        fect, made a part of its charter.  That act gives the bank 60 days within which to redeem its
                notes; and the further provision that, that act shall not *prevent* the issuing of an injunction,
                does not change the law respecting the granting of injunctions.

          The act of June 21, 1837, which provides that an injunction *may* be issued when any banking
                institution shall refuse to pay its debts, is not imperative, but leaves it in the sound discretion
                of the court, upon a proper case being made.

          An injunction against a bank goes to prevent all action whatever, and is rather in the nature of
                a final injunction which is sometimes granted at the termination of a cause, than the usual
                injunction to prevent some particular mischief.

          Except in cases where the bill is filed by a bank commissioner, showing fraud, violation of the
                charter, or insolvency, courts of equity require notice of application for injunction; and also
                require a case to be made that would authorize the court to wind up the concerns of the bank.

This was an application for an injunction.   The facts of the
case are sufficiently stated in the opinion of the chancellor.

W. Hale and P. Morey, in support of the motion.

I.  The charter of the bank of Pontiac, taken in connection
with the law of 1833, gave the court of equity full jurisdiction
over the bank, and authorized it to issue an injunction on an
application like the present.   *Laws of* 1833, 529; also the laws
of the 2d, and extra session of the 6th legis. council of Michi-
gan, 134.

The legislature, in passing these acts, clearly contemplated
a proceeding like the one now before the court.   They either
supposed there was some law then in existence, providing for
such an application to chancery, or else by the law of 1833,
they specially authorized it.

If there was no law of that nature in force, the conclusion
is irresistible that the legislature intended this statute as intro-
ductory of a new law.   The enactment cannot pass for no-
thing.   If such a proceeding was not intended by the legisla-
ture, why do they provide that the injunction shall be dissol-
ved upon payment of the debt and 20 per cent damages, and

First Circuit.

Barnum
*vs.*
Bank of
Pontiac.

that the bank shall be dissolved unless it pays such debt and damages; and also, that nothing in said act contained shall prevent an injunction being issued whenever any payment or demand shall be refused?

The contrary supposition would show that the legislature had, with uncommon prudence, been fortifying the banks against a contingency which could never happen.

The bank received its charter, subject to the provisions of the act in question. If any part of the act is obligatory upon the bank, the whole of it must be.

It is a rule of law, as well as of equity, and will not be contradicted, that "a statute ought, upon the whole, to be so construed, that, if it can be prevented, no clause, sentence, or word, should be superfluous, void, or insignificant.". *Dwarris on Stats.*, vol. 2, 658.

With the doctrine that the court of equity was, by this statute, invested with jurisdiction over the bank, this rule will apply, not otherwise.

It is likewise a maxim in law, that "every statute made against an injury, gives a remedy, either expressly or impliedly." *Id.*, 662; 2 *Inst.*, 55.

"In statutes, incidents are always supplied by intendments; or, in other words, whenever a power is given by a statute, every thing necessary to the making of it effectual is given by implication." 2 *Inst.*, 306.

II. The act of the 21st of June, 1837, gives to the chancellor, in express terms, the power to grant injunctions against any corporation, having banking powers, whenever it shall become insolvent, or unable or shall refuse to pay its debts, &c., such injunction may be issued on the application of the attorney general in behalf of the state, or of any creditor or stockholder of such corporation, &c.

1st. The charter of the bank and the law of 1833, are perfectly consistent with this act. These acts are to be construed in connection with each other. 1 *Kent Com.*, 463.

2d. It contemplates the issuing of an injunction on applica-

tion of any bill holder, and in other cases, and gives the authority to the chancellor.

3d. The act of June 21, 1837, being a new law, its constitutionality may be questioned. But that position cannot be maintained. It is not a law impairing the obligation of contracts; it only prescribes a change in the remedy, or rather gives the bill holder a remedy which he had not before.

In the case of the *Attorney General* vs. *The Utica Insurance Company,* (2 *Johns. Chan. Rep.,* 371,) a prosecution was commenced by the state, to restrain said company from issuing paper money when incorporated only as an insurance company, brought in January, 1817, by virtue of a statute passed 6th April, 1813, no *quo warranto* had been issued.

By a joint resolution of the legislature, the attorney general was directed to institute such legal proceedings as might be necessary and proper for the purpose of dissolving the bank of Niagara. A *quo warranto* was filed in the supreme court, and injunction was prayed to stay proceedings of said bank till judgment of ouster; and the chancellor said the principles of the Utica case would govern him.

Attorney general applied for injunction, March 28, 1825. *Hopk. Ch. R.,* 354, 362.

A new statute is passed April 21, 1825, authorizing the chancellor to issue injunction, either on application of attorney general or any creditor, to restrain and have receiver appointed, &c. The attorney general filed a bill, December 13, 1826, under this law, of April 21, 1825. *Hopk. Ch. R.,* 591.

In the case of the *State* vs. *The bank of Columbia,* under the act of April 21, 1825, an injunction was granted by the chancellor *exparte,* on application of the attorney general, and also several creditors in New York. 1 *Paige R.,* 511.

III. This is a case where the chancellor should grant an injunction, which is a power to be exercised in his sound discretion.

1. The statute gives the power, and of course contemplates its exercise. 1 *Kent Com.,* 462.

2. It is a remedial statute passed for the public benefit, and

for the prevention of frauds. Statutes of this description should be construed, so as to suppress the mischief and advance the remedy. 1 *Bl. Com.*, 87. " Such statutes as are beneficial for the people, shall be expounded largely, and not with restriction. 6 *Jacob Law Dict.*, 123.

3. From the framing of this act, it was evidently the intention of the legislature to impose extraordinary restraints upon the banks, and give a speedy remedy. 2 *Kent.*, 314; 3 *Bl. Com.*, 431. Both a court of equity and a court of law are equally bound and equally profess to interpret statutes according to the true intent of the legislature. *Fonb. Eq. B.* 1 *Ch.*, 1 *sec.* 3, *note H.*; 1 *Chitty Com. Eq. Juris.*, 16.

4. Because the bill holder has not a perfect remedy at common law against the bank.

5. A case having been made out within the statute, the discretion of the chancellor ceases, and it becomes imperative upon him to grant an injunction. 1 *Paige R.*, 516.

If a statute says a thing *may* be done, which is for the public benefit, it shall be construed that it *must* be done. *Dwarris on Stat.*, 712.

BATES and WALKER, contra.

*First*, it does not appear from the bill of complaint that the bank refused to pay the bills issued contrary to the charter. (*See charter of the bank, last clause; sec. 9, laws* 1835, *p.* 139; *see act relative to banking institutions, revised laws*, 1833, *p.* 529; *laws* 1839, 283, 311.)

*Second.* The charter of the bank is a contract within the terms of the constitution of the United States, and having been granted and accepted before the act granting this court jurisdiction, the legislature had no power to repeal, IMPAIR or alter the charter against the consent, or without the *default of the corporation judicially ascertained.* (*See charter of the bank; Const. U. S.*, *art.* 1, *sec.* 10; 4 *Wheat. U. S. Rep.*, 518; 4 *U. S. Cond. Rep.*, 562, 570, 573, 576; 6 *Cranch*, 87, 136; 2 *Bl. Com.*, 441, 317; 9 *Cranch*, 43, 293; 1 *Kyd on Corp.*, 14, 16; *Powell on contracts*, 6; 6 *Cranch.* 87; 2 *Kent's Com.*, 245, 246, 2512; *Term Rep.*, 540; 2 *Johns. Ch. R.*, 380; 3 *Cond. Rep.*, U.

*S.*, 262; 1 *Paige Chan. Rep.*, 107; *Angel and Ames on corp.*, 503; 2 *Cases in Chan.*, 165; 2 *Vesey*, 414; *Ambler*, 209; *Dick. Rep.*, 599; 5 *John. Chan. R.*, 380.)

*Third*, The act of 1837, being inapplicable, the complainant must resort to his remedy at common law, and this court at common law, could not hear this motion, unless insolvency was charged; 3 *Term Rep.*, 244; 2 *John. Ch.*, 390; 5 *Johns. Ch. Rep.*, 380; an individual could not move in this matter; 6 *Johns. Chan.*, 46, 160.

*Fourth*, Granting the court has the full power, by the act of 1837, does this bill make out a case under the act? The power being discretionary, will the court, upon the complaint of an individual, grant an injunction in the first instance? 2 *Johns. Chan.*, 204; 6 *John. Ch.*, 160, 48; 2 *J ohns.*, 144; 3 *Atkyns*, 200; 2 *Vesey*, 51; 1 *P. Wms.*, 445; *Mitford*, 115; *Cooper's Eq.*, 149; 6 *John. Chan.*, 20; 1 *Cox's Cases*, 102.

*Fifth*, Is there sufficient proof under the statute? (*See Hopk. R.*, 599.)

*Sixth*, The bill does not alledge that the bank had refused the privilege of suspension act of 1837.

*Seventh*, If an injunction is granted, it will prejudice the rights of other creditors, as they are not parties to the bill.

THE CHANCELLOR.—This application is founded entirely upon the act of June 21, 1837. The bill alledged merely a demand and refusal to pay. It contains no allegations of any impending mischief, danger or hazard, of the rights of the complainant.

It presents no one of the ordinary features required to authorize this summary interposition, according to the general principles of proceedings in chancery.

In the act of incorporation of the bank of Pontiac, the act of April 23, 1833, is specially referred to, and in effect is made a part of its charter. That act provides, if any bank shall not pay its notes on demand, the charter shall not, for that cause be dissolved, and gives such bank sixty days within which to redeem its notes. It further contains a provision that that act shall not prevent the issuing of an injunction. It may become

necessary to examine for what causes an injunction could have been issued under that act.

Very clearly, the mere provision that the "act should not *prevent* the issuing of an injunction," does not change the law or the practice of the court in this respect.

It may, therefore, be premised that the legislature contemplated that a case should be made which would authorize the exercise, according to the course and practice of this court, of this summary interposition.

The act of June 21, 1837, which is relied upon in this application, provides that an injunction *may* be issued, when any banking institution shall refuse to pay its debts.

It has been urged that the act last mentioned is imperative; that whenever there is a demand and refusal to pay, the injunction must issue of course. To act upon this construction, would lead to results so variant from the uniform course of equity proceedings, that the court must pause before adopting it.

1. It would open the door to collusion.

2. It would almost invariably lead to unjust and inequitable results.

If the construction contended for of the act of 1833, and the act last mentioned, shall obtain, that an injunction must be granted on demand and refusal, and that upon payment of the amount claimed in the bill, and twenty per cent in sixty days, the injunction shall be dissolved, the most probable result would be, that the bank enjoined struggling for existence, will within the limited period, redeem the amount claimed by the bill, although by doing so it would be unable to pay the remaining creditors of the bank; and this under the direction of the court. But it is still bound by the statute to become an accessory in enforcing this unjust distribution.

There are other objections to which this construction would lead. From the statutes and from the settled practice, a legal discretion in this as in other cases, must be exercised. This being granted, how shall this be done, or rather what rule, applicable alike to all cases, shall be adopted. In view of the dif-

ficulties and consequences which have been before alluded to, I know of no better rule than the usual test, that where an injunction is asked, in the first instance, to require that a case shall be made showing immediate danger or some impending mischief. From this it will follow, that the application in this case must be denied.

It has been contended that the act of 1837, is so far *ex post facto* in its operations; that it must be regarded as unconstitutional, and therefore of no validity so far as regards the banks subject to the law of April 23, 1833. After arriving at the conclusion before stated, it may not, perhaps, be necessary to consider that question.

Without saying that it is unconstitutional, and I am as yet unable to come to that conclusion, it is for the present sufficient to say, that it would operate with great severity upon the banks, and with great inconvenience to the public, if the act of 1837, is regarded as imperative, if an injunction must issue at all events when a bank shall refuse to pay any one of its notes.

It is stated by the chancellor, in the case cited in *Hopkins R.*, 591, that these are rather in the nature of the final injunctions that are sometimes granted at the termination of a cause, than the usual injunctions to prevent some particular mischief. An injunction against a bank goes to prevent all action whatever. It is, for the time being, an utter prostration of all its powers. Hence, except in cases where the bill is filed by a bank commissioner, showing fraud, violation of the charter or insolvency, courts require notice, and proceed with caution. And it seems to me that it is not too much and is consistent with the discretion which the court is bound to exercise, to require such a case to be made, as would authorize the court, if it prove true and according to the exigency of the case, to wind up the concern, and make an equal distribution of the assets among all the creditors.

This may be made out by immediate pending insolvency, and therefore danger to all the creditors; or such danger of a misapplication of the funds belonging to the bank as would

require the interposition of the court for the safety of its cre- <span>First Circuit.</span>
ditors.

<div style="float:right">Barnum<br>*vs.*<br>Bank of<br>Pontiac.</div>

The decision upon the other points made in the argument, as well as the point last referred to, and also upon what precise state of facts this court would feel itself bound to proceed and wind up this or any other bank, will be more appropriate, when the case shall have been heard upon the presentation of such facts before it.

Motion denied.